SRM/JLT/mrs - **12242**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| DEBORAH NUZZI and THOMAS NUZZI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v | ) | No.   07-2239 |
| | ) | |
| ST. GEORGE COMMUNITY CONSOLIDATED | ) | Judge Michael P. McCuskey |
| SCHOOL DISTRICT NO. 258; RICHARD REYES, | ) | |
| individually and in his official capacity; WILLIAM | ) | |
| BODEMER, individually and in his official capacity; | ) | Magistrate Judge David G. Bernthal |
| SHARON THIESEN, individually and in her official | ) | |
| capacity; PETER DUBRAVEC, individually and in | ) | |
| his official capacity, MARK GROSSO, individually | ) | |
| and in his official capacity; and DARRELL | ) | |
| PENDLETON, individually and in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO RULE PLAINTIFFS' AFFIDAVIT [DOCS 137-6 AND 138]] INADMISSIBLE, OR TO STRIKE THE AFFIDAVITS AND FOR SANCTIONS UNDER FRCP RULES 11 AND 56(g)

NOW COME Defendants, ST. GEORGE CONSOLIDATED SCHOOL DISTRICT NO. 258,

RICHARD REYES, WILLIAM BODEMER, SHARON THIESEN, PETER DUBRAVEC, MARK

GROSSO AND DARRELL PENDLETON, by and through their attorneys, STEPHEN R. MILLER,

NIKOLETA LAMPRINAKOS and JOHANNA TRACY of MYERS & MILLER LLC, and

respectfully move this Court to find the Affidavit of Thomas Nuzzi (Doc. 137-6) and Deborah Nuzzi

(Doc. 138) submitted in opposition to Defendants' Rule 56(b) Motion for Summary Judgment to

be inadmissible, or to strike them, and to enter sanctions pursuant to Rule 11 and 56(g). In support

thereof Defendants state as follows

**<u>Introduction and Legal Framework</u>**

1.      Defendants filed a Motion for Summary Judgment pursuant to Rule 56(b). (Doc. 116)

2.      Plaintiffs filed their Response to the Motion for Summary Judgment which included affidavits prepared by both Plaintiffs.  Thomas Nuzzi's Affidavit (Doc.  137-6) is attached to this Motion as Exhibit 1 and Deborah Nuzzi's Affidavit (Doc.  138) is attached to this Motion as Exhibit 2.

3.      The Thomas Nuzzi Affidavit is 107 pages and the Deborah Nuzzi Affidavit is 94 pages.

4.      These documents are not affidavits.  They do not comply with Rule 56(e).  They do not contain facts in a form that would be admissible in a court of law.  They do not comply with the  Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Local Rules of the Central District of Illinois.

5.      The Affidavits are subject to sanctions under both Rule 11 and Rule 56(g) as they were made in bad faith and solely for the purpose of delay and harassment.

6.      To give this Court a flavor of what will be discussed in this Motion, the Defendants offer an anecdotal example of a "fact" similar to many that appear in the Thomas Nuzzi Affidavit; this particular example appears on page 43 of a **107 page affidavit--**by a witness who has already given a 430 page deposition. Keeping in mind that this paragraph is supposed to be a "fact" offered in opposition to a dispositive motion, we quote verbatim:

> **"The saying goes something like this: When we start developing the power of love over the love of power will we find true happiness."  Page 100 of 107.**

7.      To give this Court just a bit more flavor of what is to come, here is another "fact" averred

by Thomas Nuzzi on page 43 of 107:

> **"This feels like an Abbott and Costello Movie Scene to the plaintiffs. This situation relies on an incompetent and dishonest bookeeper giving inaccurate information to attorneys who know nothing about educational finance. We keep going around and around with entries that are all explained by the fact that the bookeeper, Loan Nguyen, did not know which were the correct codes in which to place certain financial items." Page 43 of 107.**

8.   Finally, before analyzing the affidavit in detail, comes this "fact" offered by Mr. Nuzzi in opposition to a duly filed, duly annotated, and otherwise conventional motion for summary judgment. This one, in particular, has elevated the level of frustration being experienced by defense counsel in responding to the Nuzzi affidavits:

> **"This has been a great ordeal for my family and the St. George family. This is exactly what I teach Master Level students about how to destroy a school system. Power does not do anyone any good especially when you are dealing with the hearts and souls of children. The children are the ones who feel it most. St. George was very fortunate to have two qualified leaders with the assistance of the staff and community to run their school system. But power and blame has ruined a great situation." Page 105 of 107.**

9.   It is entirely unreasonable for defense counsel to be required to spend countless hours dissecting an "affidavit" that contains invective, editorial comments, references to depositions not produced that were taken in other lawsuits, exhibits from other lawsuits, exhibits never produced, exhibits referenced with no page cites, and which otherwise clearly fails to meet the requirements of Rule 56(e). The documents reflect a wholesale disregard for our system of testing the merits of a dispositive motion. They are unfair. They are sanctionable.

10.     The 94 page affidavit of Deborah Nuzzi is almost identical to the Thomas Nuzzi affidavit, although it differs in some minor respects, and both affidavits suffer from the same infirmities.  This motion seeks to analyze the Thomas Nuzzi Affidavit but not the Deborah Nuzzi Affidavit and moves to strike both.  We will, however, point out just one more nugget of commentary–or rather,  a "fact"–from Deborah's Affidavit, but not in Tom's:

> **"Rich Reyes thought every independent woman was out of control.  He believes that women are not best suited for a job that he perceives as powerful.  He does not treat his wife with respect and many people in the community talk about this." Deborah Nuzzi Affidavit P.  21 of 94.**

## Applicable Law

11.     An affiant must set forth facts rather than opinions or conclusions.  An affidavit that is conclusory and lacking in specific facts is inadequate to satisfy the movant's burden.  *Maldonado v. Ramirez*, 757 F. 2d 48 (3rd Cir.  1985).

12.     Conclusory allegations unsupported by specific facts opposing a motion for summary judgment are not sufficient to defeat the motion.  *Thomas v.  Christ Hospital and Medical Center,* 328 F. 3d 890 (7th Cir.  2003).

13.     Affidavits containing ultimate facts or conclusions of law cannot defeat a summary judgment motion.  Legal conclusions are totally ineffectual and are not to be given any consideration or weight whatsoever.  *Sanders v.  Douglas*, 565 F. Supp 78 (C.D. Calif.  1983).

14.     An affidavit opposing a motion for summary judgment may be disregarded if it contains conclusions of law or of ultimate fact, statements made upon information and belief, or argument; affidavits should set forth such facts as would be admissible in evidence, and

should show affirmatively that affiant is competent to testify to matters stated therein. *Cohen v. Ayers*, 449 F. Supp. 298 (N.D. Ill. 1978).

15.    Pure legal conclusions must be disregarded in an affidavit submitted in connection with a summary judgment motion. *Vitug v. Multistate Tax Commission*, 860 F. Supp 546 (N.D. Ill. 1994).

16.    Under the "sham affidavit" doctrine, courts will disregard an offsetting affidavit that is submitted to withstand a motion for summary judgment when the affidavit contradicts prior deposition testimony without adequate explanation and creates only a sham issue of material fact; for the doctrine to apply, the affidavit must clearly contradict prior sworn testimony, rather than clarify confusing or ambiguous testimony, and the contradiction must lack credible explanation, such as new evidence. *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.,* 2009 WL 3094844 (D.D.C. 2009).

17.    Self-serving statements of facts in a party's brief, not in proper affidavit form, may not be considered in determining if a genuine issue of material fact exists sufficient to preclude summary judgment. *Mays v. United States Postal Service,* 928 F. Supp. 1552 (M.D. Ala. 1996). While this proposition covers a brief, the principles applicable to self-serving statements apply to the Nuzzi affidavits.

18.    Arguments concerning law or the merits of a case in affidavits responding to a motion for summary judgment may be disregarded by the trial court. *U. S. v. Coleman Capital Corp.*, 295 F. Supp. 1016 (N.D. Ill. 1969); *Bensen v. Jackson*, 238 F. Supp. 309 (E.D. Pa. 1965).

19.    Rule 56(e) provides that affidavits filed in support of or opposing summary judgment "shall" be made on personal knowledge. This requirement is mandatory and requires that an

affidavit state matters personally known to the affiant. *Midland Engineering Co. v. John A. Hall Construction Co.*, 398 F. Supp. 981 (N.D. Ind. 1975).

20.    "Belief", no matter how sincere, is not equivalent to "knowledge," and a statement in an affidavit as to what the affiant verily believes does not satisfy the requirement that affidavits filed in support of or opposing summary judgment shall be made on personal knowledge. *Jameson v. Jameson,* 176 F.2d 58 (D.C. Cir. 1949).

### General Categories of Some (But Not All) of the Objectionable Material

21.    The categories of objectionable content seem to fall within these general categories:

   a.    Opinions and conclusions rather than facts;

   b.    Statements of ultimate facts;

   c.    Conclusions of law and legal arguments about the merits of the case;

   d.    Violations of the "sham affidavit" doctrine by averring "facts" in an offsetting affidavit that contradict prior testimony or pleadings in an attempt to create an issue of material fact;

   e.    Self-serving statements not in proper affidavit form with no evidentiary support;

   f.    References to documents and depositions taken in other cases that are not attached, or even produced, in this lawsuit as required by Rule 56(e)(1);

   g.    References to documents without page cites such that specific references cannot be examined for accuracy;

   h.    Statements not made on personal knowledge; and

   i.    Material that constitutes "belief," but not "knowledge."

22.    While there are, interspersed within Tom's 107 page affidavit, perhaps a few actual "facts,"

it is laborious–more like a treasure hunt–to parse out the admissible "facts" from the inadmissible invective, speculation, hearsay and legal argument; the document so clearly flouts the rules that it is virtually *impossible* to fully analyze its contents in this motion.  It is so wanting that this Court has no option but to strike it, or to rule the entire document inadmissible.

23.     This exercise only partially lists the catalog of woes; however, having spent many, many hours just to highlight these inadequacies, defense counsel believes it would take at least several more days to fully and properly annotate the deficiencies, a task which counsel reasonably believes is unnecessary.

## AVERMENTS THAT ARE INCONSISTENT WITH PLEADINGS OR DEPOSITIONS

24.     Our analysis begins with several statements that are flatly contradicted by four prior complaints.  On page 2 of 107 Tom Nuzzi states as a "fact":

**"B.3. Thomas Nuzzi did not seek leave under the FMLA."** Page 2 of 107.

25.     Actually, he did.  Four times, to be exact. Each Complaint contained a Count I which was captioned:

**"COUNT I–VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT REGARDING THOMAS NUZZI, 29 U.S.C. 2201 ET.  SEQ."**

26.     ¶¶26 and 27 of the Third Amended Complaint [Doc. 22] specifically alleges that Thomas Nuzzi *requested leave under the Family and Medical Leave Act.*

27.     An averment that is contradicted by not one but *four* prior pleadings constitutes a "sham" allegation designed solely to raise an issue of fact.  Such an averment is sanctionable, not

standing alone, but as part of a pattern evident from the remaining 106 pages, as will be demonstrated below.  Such a flatly contradictory averment *must* be a tactic--there can be  no other logical explanation.

28.     As a second example, Mr.  Nuzzi avers in his affidavit:

**"Thomas Nuzzi has never said that his contract allows him to view his personnel file."** Page 81 of 107.

29.     Actually, Thomas Nuzzi *has* said that his contract allows him to view his personnel file. Once again, four times, to be exact:

**"COUNT 11–BREACH OF CONTRACT–THOMAS NUZZI**

**¶125.  Plaintiff's contract permits plaintiff to view and copy his personnel file." [Doc.  22]**

30.     The affidavit contains many other examples of averments that are contradicted by either a prior pleading or Mr.  Nuzzi's deposition.

## MATTER THAT CONSTITUTES LEGAL ARGUMENT

31.     The affidavit is full of legal arguments.  Here is just a sampling of--literally--dozens of legal arguments and conclusions which are so prevalent, and so intertwined on most pages of the Affidavit, that it is virtually impossible to respond or analyze them in a reasonable amount of time.  It is inconceivable that counsel could have read and approved these **repeatedly** inadmissible contents:

a.      "The Illinois School Code was not followed in the non-renewal of Deborah Nuzzi." Page 3 of 107.

b.      "It is illegal to hold against a person the reason for their medical and ultimate FMLA leave." Page 3 of 107.

c.      "He neglected to tell the St. George School Board that this could be a conflict of

interest." Page 3 of 107.

d.  "Discovery showed that Deborah Nuzzi's non-renewal was completely pretextual and had nothing to do with actual performance." Page 4 of 107.

e.  "The evaluation created to support her non-renewal was not completed in congruence with the Illinois School Code..." Page 4 of 107.

f.  "The undisputed documented facts produced in print and depositions of the plaintiffs and their witnesses showed that the St. George School Board violated the Open Meetings Act numerous times." Page 5 of 107.

g.  "The Open Meetings Act does not allow for a specific description but must use the exceptions that the state allows for a school board to go into closed session." Page 5 of 107.

h.  "The Regional Superintendent's office performed an audit and it was revealed that the St. George School Board violated the Open Meetings Act [sic also lacks foundation]." Page 7 of 107.

i.  "...when they placed Chuck Hensley on the school board in violation of the Open Meetings Act." Page 7 of 107.

j.  "The St. George Board violated the Open Meetings Act when they put Dave Hanson on the school board." Page 8 of 107.

k.  "There has been no doubt that Deborah Nuzzi has raised a question of fact in the case of the St. George School Board breaching her contract...The following are the ways in which her contract was breached....[sic followed by two pages of colloquy]." Page 9 of 107.

l.  "The school district failed to offer her COBRA in a timely manner." Page 10 of 107.

m.  "This is against federal cobra [sic] law." Page 10 of 107.

n.  "The school district failed to keep correct records." Page 10 of 107.

o.  "...which they can't do as that is a function of the evaluator according to the Illinois School Code." Page 11 of 107.

p.  "The Illinois School Code does not include specifics about a principal's evaluation, however it does require an evaluator to be certified..." Page 11 of 107.

q.      "The St. George School Board did not follow school code in non-renewing Deborah Nuzzi. This is confirmed by their own general council [sic]." Page 11 of 107.

r.      "The St. George School Board began breaching Thomas Nuzzi's contract in the first year with the fact that they did not evaluate him by the contract date." Page 11 of 107.

s.      "The District is required to do everything that a large school district is required to do and they have been operating inappropriately and incongruently to these requirements for years." Page 12 of 107.

t.      "A point of law has already been addressed to indicate that Deborah Nuzzi did not make more money that [sic] she was supposed to make." Page 34 of 107.

u.      "It was already proven after Bill Bodemer's and John Reitveld's investigation of October 2006 that Deborah Nuzzi was not making any additional compensation." Page 35 of 107.

v.      "Not allowing Michael Raef to apply for or accept any open job for which he was qualified because "he was the husband of Tom's secretary Jane Raef," would have constituted discrimination against him. It is not legal to treat someone differently because of who their spouse is." Page 36 of 107.

w.      "This point in the Motion for Summary Judgment is incorrect in describing a School District's General Ledger." Page 37 of 107.

x.      "According to the 23 Illinois Administrative Code Subtitle A, this function, 2550 is the only one allowed for Pupil Transportation Services." Page 42 of 107.

y.      "Bill Bodemer acted inappropriately as a single board member who was not directed by the school board to meet with Loan Nguyen to hear Loan's allegations against Thomas Nuzzi." Page 44 of 107.

z.      "He began a board investigation without the knowledge or approval at a school board as per school code. This constituted an Open Meetings Act violation." Page 44 of 107.

aa.     "Loan Nguyen is not a credible person." Page 50 of 107.

bb.     "While the meeting was being conducted, Rich Reyes left the room to discuss matters with Loan Nguyen and her family. He was gone for at least 15 minutes while the closed session meeting continued. This is a violation of the Open Meetings Act. Check with Sara...This is an absolute violation of the Open Meetings Act [sic identity

of 'Sara' is unknown]."  Page 53 of 107.

cc.     "Loan Nguyen obtained the records of Thomas and Deborah Nuzzi in an unauthorized manner that violated their federal rights.  Nguyen went into their personnel files in the district office, copied the entirety of their files, copied their paychecks....and passed on this information to...the state police (who knew that there had been no warrant for it according to State Police Officer Cosgrove's testimony in a deposition)..." Page 53 of 107 [sic this averment apparently references the deposition of a state police officer taken in another lawsuit, possibly their defamation suit (Exhibit 3 attached to this Motion)].

dd.     "A School District or School District Attorney have [sic] no authority to act as law enforcement in accessing protected employee information without their permission." Page 56 of 107.

ee.     "Rich Reyes, School Board President was upset that the Nuzzis insisted on having legal representation and said that it was "not necessary." Just another way in which Rich Reyes was attempting to take away their rights as citizens."  Page 57 of 107.

ff.      "If the board was having monthly discussions about Thomas Nuzzi's performance and his relationship with the school board, they were violating the Open Meetings Act....The School Board is only allowed to discuss items on the agenda of which the public is made aware."  Page 60 of 107.

gg.     "To Thomas Nuzzi's knowledge, what the board did was to continue to make decisions in executive session, which was a violation of the Open Meetings Act..." Page 60 of 107.

hh.     "Telling two board members does not constitute talking to the board about a matter, but the St.  George School does not follow this school code.  They each act and make decisions outside the school code thereby breaking the Open Meetings Act often." Page 61 of 107.

ii.      "This is the same situation as the appointment of Chuck Hensley as a school board member that ultimately had to be disallowed due to the Open Meeting Violation that State Attorney, Jamie Boyd established...[sic followed by an extended legal analysis of the Open Meetings Act...]..That is not congruent with Illinois School Code and the Open Meetings Act [sic in addition, defense counsel has never heard of 'State Attorney, Jamie Boyd']"  Page 73 of 107.

jj.      "Jim DeZwaan did not follow the training protocol for the State of Illinois Department of Education that was mandatory for all certified evaluators in performing evaluations."  Page 76 of 107.

-11-

kk.   "The fact that the St. George School Board attempted to give Deborah Nuzzi goals acting as her evaluator was also against the Open Meetings Act..." Page 77 of 107.

ll.   "First, as a consultant to the School Board, which was the position that DeZwaan was in, it was not legal for DeZwaan to be going through any school records in Deborah Nuzzi's office or elsewhere.  To conclude that "he could not find documentation for these areas of performance, and therefore it meant the work was not done in that area" is beyond ridiculous.  That is like saying if you can't see the sun in the sky, that means it is not there."  Page 77 of 107.

mm.   "[sic Discussion of FMLA facts and interpretation of FMLA law]...That is direct also that evidences how the St.  George School Board and Jim DeZwaan held Deborah's FMLA against her."  Page 77 of 107.

nn.   "The St.  George School Board did not use all of Deborah Nuzzi's sick and vacation days before beginning her unpaid FMLA leave.  This is against FMLA guidelines."  Page 79 of 107.

oo.   "[sic Entire paragraph discussion of FMLA sick days]...The St.  George School Board is treating Deborah Nuzzi differently from similarly situated employees and discriminating against her."  Page 80 of 107.

pp.   "Deborah Nuzzi included these documents in the Rule 26 information sent to Steve Miller in July 2008."  Page 81 of 107.

qq.   "[sic Extensive discussion about the legal right to view and copy personnel file]...Thomas Nuzzi's rights were violated because he requested in writing to view his file on numerous occasions and was refused....this is another violation of Thomas and Deborah's rights...Nuzzi also spoke to Joe Perkoski about the board violating his rights..." Page 82 of 107.

rr.   "Deborah Nuzzi was never given due process rights in regards to the evaluation completed by Jim DeZwaan."  Page 87 of 107.

ss.   "[sic Lengthy analysis of Jim DeZwaan's evaluation]...DeZwaan notes that Deborah Nuzzi was unable to meet with him as she was on FMLA leave.  What kind of contradiction does that evidence?  Deborah Nuzzi's non-renewal indicates she was non-renewed because of the evaluation, and nothing else."  Page 88 of 107.

tt.   "A notice of non-renewal for a principal is not just 45 days prior to the end of the school year.  A principal must be notified of non-renewal by April 1 of a given year.  See documents authored by Susan Glover, one of the general counsel attorneys for

the St. George School Board  [sic references unidentified documents]."  Page 90 of 107

uu.   "According to Illinois School Code, Deborah Nuzzi did have a right to renewal because she was non-renewed after the required date of April 1.  The School Board drafted Deborah Nuzzi's renewal and voted on it on April 3, 2008...Deborah Nuzzi...did not request a hearing as she knew she was already automatically renewed as per Illinois School Code."  Page 90 of 107.

vv.   "Deborah Nuzzi never received an e-mail that provided her with an evaluation instrument that was intended to be used for her evaluation.  This is shown in the exhibit attached to this point in the MSJ."  Page 94 of 107.

ww.   "Again, Deborah Nuzzi's experience with Jim DeZwaan as her superintendent and appointed evaluator would not be evidence for her that DeZwaan had great experience in evaluating principals since he was supposed to evaluate her but never did."  Page 94 of 107.

xx.   "Rich Reyes appointed Dave Hanson on the School Board without going through the proper procedure process."  Page 102 of 107.

yy.   "You will notice in the agenda of meetings that the full Illinois School Code is not given before they enter closed session...When you don't have the correct code number and you do not announce the "general" reason why you are going into closed session you have violated the Open Meetings Act."  Page 103 of 107.

zz.   "The Loan Nguyen deposition called by the defense is not part of their packet for Motion for Summary Judgment [sic].  This is the former bookkeeper that was stealing from the district and was called incompetent, who St. George hired back in December, 2008, to assist them with their books...[sic further hearsay and non-foundational discussion]."  Page 106 of 107.

## **INADMISSIBLE HEARSAY AND LACK OF FOUNDATION**

32.   The Affidavit is littered with inadmissible hearsay.  The problem for defense counsel is that the hearsay is so random, and so prolific, that attempts to annotate it would literally take days. Throughout the document are statements that lack foundation, are not based on admissible evidence, and reference documents that were never produced or for which Mr. Nuzzi lacks personal knowledge.  Here are some examples:

a.      "Loan Nguyen, according to Marcie Kolberg and Russell Leigh, Loan was incompetent." Page 38 of 107.

b.      "According to the previously hired evaluator, Rich Dombrowski, the school board was simply on a "witch hunt," in their plan for Deborah Nuzzi's evaluation. [sic additional hearsay statements]..." Page 90 of 107.

c.      "This was confirmed by Marci Kolberg when she reported to the School Board that for two years in a row that it took her double the amount of time for her to try and figure out Loan's entries in the General Ledger because they were so incorrect." Page 39 of 107.

d.      "According to the state handbook, object number 222 is the code for Medical Insurance [sic references  "the state handbook," not identified, no page or section referenced]." Page 40 of 107.

e.      "The state does not go by the descriptive words that you place next to the code." Page 40 of 107.

f.      "Therefore, the 'Transportation Leader' which should have read 'Transportation Director' should have never been put in that box according to the state manual [sic "the state manual" not identified, no page or section referenced]." Page 40 of 107.

g.      "Loan Nguyen had been overpaying herself since her first year of employment with the St. George School District.  Loan Nguyen was trying to point the finger at Thomas Nuzzi to try and protect the fact that he caught her misappropriating funds." Page 43-44 of 107.

h.      "Marci Kolberg *does* [emphasis added] have the documents that show how Deborah Nuzzi's salary was figured.  She simply could not "recollect" that during the deposition [sic referencing unknown documents]." Page 47 of 107.

i.      "To continue, the following notes are just a sampling of the incompetencies of Loan Nguyen:

        i.      Not taking care of sick day totals at the beginning of each school year.
        ii.     Not keeping track of sick days correctly.
        iii.    [sic PLUS ONE FULL PAGE OF ADDITIONAL ITEMS WITH NO FOUNDATION WHATSOEVER, NO SPECIFIC DOCUMENTS WITH SPECIFIC ANNOTATIONS OR FOUNDATIONAL TESTIMONY TO SUBSTANTIATE THE AVERMENTS]." Page 41-42 of 107.

j.      "Russell Leigh sent a note to Thomas Nuzzi indicating that he changed the finding

on the Imprest Fund as he realized that the checks weren't as he originally thought [sic no document produced, no specific annotation]." Page 49 of 107.

k.   "Thomas Nuzzi had an employee, Loan Nguyen, who was stealing money from the District."  Page 51 of 107.

l.   "Since the defendants refused to produce the requested bills from Marcie Kolberg's office, the plaintiffs cannot address actual bills."  Page 52 of 107.

m.   "The Hayden Report showed that Kelly Hayden did in fact not understand school finance." Page 55 of 107.

n.   *The Nuzzis* [emphasis added] found that Hayden's report contained direct quotes from Loan Nguyen and further showed Hayden's lack of understanding of school finance and the process in the St. George District for reimbursement...They threw Hayden's report out at that time.  Why is it now being resurrected and used against the Nuzzis?  Apparently the Defendants don't have the "real documentation" to attempt to prove their point so they're trying to use anything to harm the Nuzzis.  'If you throw enough Jello at a wall, perhaps some will stick,' seems to be the Defendant's hope and operation."  Page 55 of 107.

o.   "If minutes reflect that the school board "reconvened in open session from closed session before adjourning" then those minutes are not accurate." Page 71 of 107.

p.   "Deborah Nuzzi's contract was non-renewed based on an evaluation...[sic discussion of Jim DeZwaan's evaluation]...therefore, Deborah Nuzzi was non-renewed based on her being on FMLA leave."  Page 76 of 107 [sic also a legal conclusion and argument].

q.   "This is a direct contradiction to the defense's entire basis for their allegation that Deborah Nuzzi was overpaid and Thomas Nuzzi planned for this.  This correct point has been verified by the district's accountant and auditor.  This fact has been confirmed by the State's Attorney and the US District Attorney, yet the case continues!  What a waste of taxpayer's money, of which the Nuzzi's are contributing to by virtue of where their home is located [sic numerous non-specific, unknown, unannoted documents referenced]."  Page 88 of 107.

r.   "Deborah Nuzzi alleges that the District retaliated against her when it hired Jim DeZwaan to be her evaluator, not consultant to the school board." Page 90 of 107.

s.   "Yes it did.  It was proven that Peter Dubravec, St. George School Board member, and Mark Regel, Bourbonnais School Board president, had numerous conversations pertaining to Deborah Nuzzi's filing of the sexual harassment and sexual

discrimination lawsuits.  Further, through deposition, it was discovered...[sic further discussion of deposition testimony, including, apparently, the deposition of Mark Regel, who was never deposed, although perhaps he was deposed in Deborah Nuzzi's sexual harassment suit (Exhibit 4 attached to this Motion)]." Page 91 of 107.

t.      "While Deborah Nuzzi doesn't recall saying those words, she would not disagree. She is also not the only person who feels that way."  Page 92 of 107.

u.      "The plaintiff cannot agree with this considering the experience Deborah Nuzzi had with Mr.  DeZwaan as her superintendent for two years....[sic then referencing an alleged recommendation of Deborah Nuzzi from the Bourbonnais School District, which is immaterial, was not produced and lacks foundation]." Page 94 of 107.

v.      "The District, after an outside auditing firm of Montague and Burke, was found to have over $799,000 missing from their bank accounts and the school board did not want an investigation [sic document never produced or identified]."  Page 95 of 107.

w.      "Health insurance premiums were outlandish."  Page 96 of 107.

x.      "I entered a world where anything goes [sic followed by lengthy colloquy of speculation and unsubstantiated statements]" Page 96 of 107.

y.      "My salary and benefits package increased by a cost to the district by only $1200 over the 4 years I was superintendent [sic aside from materiality, no admissible foundation documents produced]."  Page 97 of 107.

z.      "Loan was proven to be incompetent by the accounting firm and auditor.  The audit did not go well for the district and the biggest complaint was Loan's incompetency." Page 97 of 107.

aa.     "P.  93 line 3–The policy manual was through the help of the School Board Association.  There was a new law about district business and e-mails." Page 100 of 107.

bb.     "According to the Law Firm Robbins Schwartz and the Illinois School Code, Board meetings are to be held at a time that is convenient for the public to attend.." Page 101 of 107.

cc.     "Reyes was warned by Dr.  Pangle about following proper procedure for closed session records.  This is another example how Reyes did not have the time to do things the right way and when things went wrong he blamed others." Page 103 of 107.

dd.  "I have attached some of my work in trying to assist the school board with their understanding of the finances [sic materiality]." Page 105 of 107.

ee.  "I have one of the budgets that I prepared for the school board for their approval. This also was more information at their fingertips that the board ever had before me [sic aside from materiality objection, no documents produced]." Page 106 of 107.

ff.  "The test scores of what my staff accomplished while I was there at Watterson for only 2 short years. [sic no explanation of what "Watterson" refers to–it has nothing to do with our lawsuit].  This was one of the highest scores in the state.  This was a great accomplishment by my staff of an inner city school. [sic Defendants believe from the context that Watterson *may* be another school where Mr. Nuzzi taught in some other state]." Page 106 of 107.

### SANCTIONABLE COMMENTS

33.  The Affidavits are suffused with inappropriate editorializing by Tom and Deborah Nuzzi, and counsel should be sanctioned for filing an affidavit containing this type of material in a publicly accessible document;  the comments appear to be the product of Tom or Deborah Nuzzi typing a stream of consciousness:

a.  "Bourbonnais decision on a new superintendent was in January, 2006.  Deborah Nuzzi filed a lawsuit against Bourbonnais in July, 2006.  Janet Drews left St. George as principal at the end of April, 2006.  So how could Tom have been supportive of Janet Drews in the time frame that this MSJ suggests.  It doesn't make sense.  This is an attempt by the defense to create smoke in [sic] mirrors." Page 17 of 107.

b.  "Whoever contributed to Exhibit 33, how did they come to this opinion?  Specific example, please.  How do they know that Thomas was frustrated with Deborah Nuzzi as opposed to being completely frustrated with the Board, their illegal actions and how they were treating him?" Page 19 of 107.

c.  "What programs did the principal want?  The principal made proposals or had teachers make proposals...There is a specific process that both Nuzzi's believe in and follow.  Blaming the marital relationship of the Nuzzi's by Rich Reyes is a convenient and easy way to place blame when the blame was actually not on either of them." Page 19 of 107.

d.  "The school board and defense attorneys have continuously tried to give the judge an image of a person who threatens an employee." Page 27 of 107.

e.  "He complained about what countless times?  Are we still discussing Larry Custer?  And to whom did whomever complain?"  Page 35 of 107.

f.  "Shortly thereafter what?  Thomas Nuzzi did tell the School Board that Larry Custer had performance issues after Larry contacted Board members and told them untruths."  Page 36 of 107.

g.  "For every grant, Loan Nguyen was supposed to put down the proper fund, function, and object, instead of pooling them all together in Administration grants.  Now that's a way to bury information!"  Page 39 of 107.

h.  "If Loan Nguyen knew the responsibilities of her job, which includes knowing the state fund, function, and object numbers and what they described, the half hour interrogation by Steve Miller during her deposition could have ended in a matter of minutes.  Steve Miller and Loan Nguyen debated why Thomas Nuzzi would put the comment, "move," to transportation salaries."  Page 40 of 107.

i.  "Every line item input into the expenditure report showed a budget balance in the negative.  This again shows Loan Nguyen's incompetence that she did not fulfill the responsibilities of this magnitude."  Page 40 of 107.

j.  "For the defense to submit this document as evidence to prove their point indicates a complete lack of knowledge and understanding of educational finance and educational accounting principles."  Page 41 of 107.

k.  "Once again a salary should NEVER come out of 40-2551-222 because that code identifies medical insurance.  If Loan Nguyen had been competent and had known her job responsibilities, she would have realized that immediately.  Loan is the one who put that line item in.  She was/is the bookkeeper.  This incompetence is confirmed in both of Marcie Kolberg's depositions."  Page 42 of 107.

l.  "This is like an Abbott and Costello Movie Scene to the plaintiffs.  This situation relies on an incompetent and dishonest bookkeeper giving inaccurate information to attorneys who know nothing about educational finance.  We keep going around  and around with entries that are all explained by the fact that the bookkeeper, Loan Nguyen, did not know which were the correct codes in which to place certain financial items." Page 43 of 107.

m.  "Plaintiffs have no idea what 'she believed.'  Exhibits show facts."  Page 44 of 107.

n.  "When the Defendants deposed Marci Kolberg through their attorney, Steve Miller, the Plaintiffs were notified of this deposition at 4 p.m. the day before the deposition.  When the plaintiffs arrived at the deposition, they obviously were not expected

because there were no copies of paperwork (exhibits) prepared for them. Every time Miller presented a document to Ms. Kolberg, he had to send someone to copy it for the Plaintiffs and their attorney. At times, he "forgot" and we had to request a copy before he continued. We wonder when Ms. Kolberg was notified of her deposition." Page 47 of 107.

o.      "It is not the job of a bookkeeper to second-guess her supervisor and take steps to try and harm him. Please see all of the abuses that Marci Kolberg found that the bookkeeper, Loan Nguyen, was doing during her tenure in office. With such grevious [sic] mistakes and abuses by Loan Nguyen (see exhibit) how could she be a reliable evaluator of what her supervisor was doing when it comes to procedure? [sic referencing unknown, unidentified, non-foundational exhibit]. " Page 49-50 of 107.

p.      "Now it says that "Tom and Deborah also submitted the same receipts for reimbursement twice," when in MSJ point 11.131 it says that the Nuzzis "constantly submitted the same receipts for reimbursements." Page 50 of 107.

q.      "Loan Nguyen made it a practice of telling Thomas Nuzzi the first week she arrived as an employee that she was offered numerous jobs...Several times, Thomas Nuzzi told Loan Nguyen that she should accept one of those positions for the betterment of her family. Strangely enough, she remained at St. George?" Page 50 of 107.

r.      "It's interesting though that attorney Joe Yurgine would not take Loan Nguyen and Michelle Francis' case when the plaintiffs and others sued Nguyen and Francis over the blog they wrote on the world wide web [sic identity of Joe Yurgine unknown to Defendants and entire statement is immaterial]." Page 54 of 107.

s.      "State Police Cosgrove, through his deposition, admitted that he showed these sensitive and federally protected personnel information to people he interviewed. This action is not protected under Qualified Immunity [sic no witness named Cosgrove was ever deposed in our lawsuit, no transcript ever produced]." Page 54 of 107.

t.      "It would be difficult to discern the exact date of Hayden's report as she did NOT date the report. What an unprofessional oversight for such an important report." Page 54 of 107.

u.      "Once again, Thomas and Deborah Nuzzi never saw this report or were told of its findings...How can this still be an issue, especially with a human resources attorney who knew nothing about finance or school finance?" Page 58 of 107.

v.      "If the hire of Russell Leigh was 'another layer of precaution,' why was Leigh not

hired in July, 2007 when the Hayden report was released and found to be so inaccurate by the board?" Page 59 of 107.

w. "...a special board meeting had to be called because of Rich Reyes' lack of responsibility as a school board president to contact the auditor in a timely manner." Page 59 of 107.

x. "Even though Thomas Nuzzi brought the St. George School District into the Black for the first time in nearly 20 years, they want to say he's incompetent." Page 59 of 107.

y. "Where is this proof? Where is this documented? This is heresay [sic] that came from a couple of disgruntled employees." Page 60 of 107.

z. "While not many administrators may have had investigations by the FBI and internal investigations, perhaps not many have bookkeepers who are caught paying themselves too much money and when separated from the position, create false accusations, create made up documents and present it to a school board who believes her." Page 61 of 107.

aa. "When Thomas wanted to put the word loyalty into job descriptions, the board did not want that word to appear in a job description, yet they use it to attempt to harm Thomas Nuzzi in this point. It was actually the opposite. Thomas Nuzzi was loyal to St. George School District." Page 61 of 107.

bb. "What about the school boards loyalty to protect taxpayer money when the school board attorney and the superintendent bring to their attention that a school district employee was stealing from the school district and they do nothing about it? In fact, they rehire her!" Page 61 of 107.

cc. How loyal is it to the tax payers that an audit done by Montague and Burke revealed that over $799,000 was missing from the bank accounts but appeared on paper, and the board refused to allow an investigation to occur in this matter [sic aside from materiality, no audit has been produced]." Page 61 of 107.

dd. "How loyal was the board to withhold information from Thomas and Deborah Nuzzi about the investigation and conclusions for months after they had the conclusions that neither Thomas nor Deborah Nuzzi had done anything wrong?" Page 61 of 107.

ee. "Once again, Steve Miller [defendants' counsel] refused to turn over the tapes of this executive session although the plaintiffs requested them." Page 62 of 107.

ff. "How could an employee on medical leave, approved FMLA by the board, be an

unauthorized visitor...? Further, federal law prohibits a person on medical leave from being treated in a demeaning or differently seated [sic] manner than any other employee [sic also includes legal argument]." Page 63 of 107.

gg.     "Rich Reyes, violated all of Deborah Nuzzi's privacy rights mandated by the federal government by "circulating a memo advising all staff of her medical condition, that she was on FMLA leave....Deborah Nuzzi's rights were completely violated and she suffered discrimination at the hands of the St. George board..." Page 64 of 107.

hh.     "As the St. George School Board is receiving health documents protected by HIPAA, to release any information whatsoever from those documents is completely overstepping their bounds." Page 65 of 107.

ii.      "Just stating Illinois School Code does not fulfill the requirements of notifying the public of why a school board is entering closed session, unless they have that in writing what that Illinois School Code stands for...The Open Meetings Act is in place to do everything possible to enable the public to understand what business is unfolding with a public entity." Page 65 of 107.

jj.      "This again established new policy which should be discussed in front of the public in open session. The public has a right to know whenever a policy is changed." Page 66 of 107.

kk.     "That's right. They were threatening Thomas Nuzzi to try and get their way." Page 69 of 107.

ll.      "These situations, because there were no policies, came down to a simple word–POWER." Page 70 of 107.

mm.   "This statement as written by Miller et al has problems....[sic followed by a purported legal analysis of the MSJ paragraph in question.]" Page 72 of 107.

nn.     "It was simply done as a retaliation against Thomas Nuzzi due to the fact that he sued the St. George School Board and their individual members for their illegal activities against the Illinois School Code." Page 75 of 107.

oo.     "It's not surprising that Loan Nguyen would make a mistake such as this as the plaintiffs are quite used to that type of incompetence from Ms. Nguyen. It is, however, surprising that an attorney investigating financial concerns would not catch that error and actually use it as an exhibit." Page 75 of 107.

pp.     "What relationship. Whose relationship? Plaintiffs don't know what this point in the MSJ is referring to." Page 75 of 107.

qq.     "Thomas Nuzzi's nonrenewal was a result of the perversion of power in existence in the St. George School Board and a retaliation because of the lawsuit that Nuzzi filed." Page 75 of 107.

rr.     "The defense is attempting to use semantics....No person could look at this document and understand its purpose let along [sic] its significance." Page 84 of 107.

ss.     "The so-called "evaluation" was not placed in Thomas Nuzzi's file because of his objections to this breach of contract and his due process rights." Page 84 of 107.

tt.     "[sic lengthy discussion of management issues]...This is a good example of how the school board, and especially Rich Reyes and Bill Bodemer, micro-managed Nuzzi's every move going against their knowledge of what role a school board and its members is [sic] supposed to fulfill." Page 85 of 107.

uu.     "...Blind siding a person without [sic] is not a productive practice. Rich Reyes wanted to get the evaluation over with as quickly and injurious as possible so he could remain powerful." Page 86 of 107.

vv.     "Apparently the defendants are trying to sway the judicial system by hypothetical situations again..." Page 89 of 107.

ww.     "Given Dombrowski's experience, the fact that Jim DeZwaan was a witness for the defense in Deborah Nuzzi's sexual harassment/discrimination case, and the fact that the school board fully knew this fact, a reasonable person would conclude that Jim DeZwaan was hired to harass Deborah Nuzzi, along with other things." Page 91 of 107.

xx.     "Perhaps they didn't tell the truth, even under oath. That isn't surprising to plaintiffs." Page 92 of 107.

yy.     "Is there some law that says that principals need to be evaluated?" Page 94 of 107.

zz.     "That is an oxymoronic statement. If a person is on a medical leave, indeed, approved FMLA leave, how could they possibly be available to be actively at work for a workplace interview? Such was the case for Deborah Nuzzi." Page 93 of 107.

aaa.    "The saying goes something like this: when we start developing the power of love over the love of power will we find true happiness." Page 100 of 107.

bbb.    "...This is the mode of operation when you do not have the time to fulfill your responsibilities, so you blame others. It is easy when you are in control of the

communication." Page 101 of 107.

ccc.   "I was present and I had a copy of the request for the closed session meeting minutes from the St. George School Board and Steve Miller refused to produce the evidence. I am curious why he will not produce the evidence. I am sure he is after the truth just like we are." Page 103 of 107.

ddd.   "I am expecting my full salary and benefits for my last year of employment. The district owes me....This is another action by the attorneys and school board to prevent us of our rights [sic] by trying to delay any type of monetary reimbursement that we desired and other employees did get. Other employees after their separation from the district received...[sic further discussion with no foundation]." Page 104 of 107.

eee.   "This has been a great ordeal for my family and the St. George family. This is exactly what I teach Master Level students about how to destroy a school system. Power does not do anyone any good especially when you are dealing with the hearts and souls of children. The children are the ones who feel it most. St. George was very fortunate to have two qualified leaders with the assistance of the staff and community to run their school system. But power and blame has ruined a great situation." Page 105 of 107.

## **IMPROPER REFERENCES TO DEPOSITION TESTIMONY OR HEARSAY STATEMENTS OF OTHER WITNESSES**

34.   Improper hearsay statements or references to deposition testimony of other witnesses:

a.   "Loan Nguyen contacted Bill Bodemer, who did not have any board authority to investigate any matters on his own. Bill Bodemer admitted this in his deposition." Page 43 of 107.

b.   "During his deposition, however, Bill Bodemer stated that school board member John Reitveld and Thomas Nuzzi were in cahoots and had rehearsed what they were going to tell him before he got to this meeting." Page 44 of 107.

c.   "Accountant Marci Kolberg confirmed that Deborah Nuzzi was not overpaid in her deposition." Page 46 of 107.

d.   "Marci Kolberg, during her deposition, said she "couldn't recollect" what the $929.20 represented. She continued that she was sure that "Tom gave (her) something in writing that showed what it was for." Page 47 of 107.

e.   "Marci Kolberg also said multiple times, "But Deborah Nuzzi didn't get an 11th paycheck." Page 47 of 107.

f.      "Marci Kolberg, St. George Bookkeeper, and Herscher School Board President, defines an Impress [sic] Fund as a... "fund used by the District to pay for items necessary for conducting the District's business." Page 49 of 107.

g.      "Russell Leigh stated that he was so set up by the board to think that Thomas Nuzzi was acting illegally that he didn't even catch that the checks said Tom's Pizza instead of Tom Nuzzi." Page 49 of 107.

h.      "This statement is absolutely incorrect.  Russell Leigh recanted these allegations saying that he inaccurately read checks made out to "Tom's Pizza" as being "Tom Nuzzi" because he was so set up by the school board in thinking that Thomas Nuzzi was acting illegally that his mind didn't even see the correct wording.  Russell Leigh reported this at a meeting on November 19, 2007." Page 50 of 107.

i.      "Marci Kolberg was actually getting frustrated with having to continually try and change the set up of the financial statements that she produced..." Page 59 of 107.

j.      "During Russell Leigh's deposition, he explained to the Attorney General's representative that his findings were not any different than most other districts." Page 59 of 107 [sic presumably referencing the Attorney General, who represented the State Police Officer Cosgrove in the slander lawsuit (Exhibit 3 hereto); also, Russell Leigh was never deposed in our case nor was his deposition transcript ever produced; also, improper annotation].

k.      "The testimonies of the school board members during their depositions said that they didn't feel anything until January 7, 2008." Page 60 of 107.

l.      "No board member ever said in a deposition that they had concerns about Thomas Nuzzi's performance in the school year 2006-2007." Page 60 of 107.

m.      "During Marci Kolberg's deposition, Steve Miller presented a sheet of paper with numbers on it and dates....[sic extended discussion of Kolberg testimony]." Page 74 of 107.

n.      "The St.  George School Board members said in their depositions...." Page 74 of 107.

o.      "[sic discussion of hiring Jim DeZwaan]...Further, through deposition it was discovered that Peter Dubravec and Mark Regel corroborated Jim DeZwaan's hire when Thomas Nuzzi was placed on Administrative Leave."  Page 91 of 107.

p.      "P.48-49–Reyes claims that I had a problem with Loan qualities."  Page 97 of 107.

q.	"Rich Reyes and Bill Bodemer admits [sic] that he did not know anything about Loan stealing money from the district."  Page 98 of 107.

r.	"Loan admits under oath that she was stealing funds from the district."  Page 98 of 107.

s.	"P.55 line 18–Police Officer Cosgrove interviewed every name that Loan gave him. Every person that Cosgrove interviewed had NO firsthand knowledge of the finances of the district [sic followed by additional speculation and statements lacking foundation]." Page 98 of 107.

t.	"Peter Dubravec did not like the Nuzzis.  This stemmed from his wife's continued influence into the workings of the board.  Mrs. Dubravec wrote a commentary in a newspaper [sic followed by additional comments lacking foundation]."  Page 98 of 107.

u.	"Page 64 line 3–Reyes was not prepared to give examples of why a score of 5 or a 4, etc.  There were no rubrics or guidelines that supported any of the scores or what they stood for..." Page 98 of 107.

v.	"Page 66 line 11 and 15–I find Reyes' statement that my reaction was the "worst reaction I could imagine." Then Reyes went on to say that I "wasn't irate or anything."  Page 98 of 107.

w.	"P. 62 line 10–Reyes never wanted me to say anything.  He was always right and I was his scapegoat."  Page 99 of 107.

x.	"P. 79 line 17–Please look at my emails about the meeting." Page 99 of 107.

y.	"Rich Reyes admitted that I had an inappropriate relationship with Dr. Kay Pangle Regional Superintendent." Page 102 of 107.

z.	"William Bodemer admits on p.79 of his deposition [sic followed by discussion of the deposition]." Page 102 of 107.

aa.	[sic Many references to deposition testimony on pp. 97–107.] Page 97-107 of 107.

## PURE SPECULATION

35.	Speculative statements:

a.	"Bill Bodemer must have "known what to do about it" as he did a complete investigation of Loan Nguyen's accusations against Thomas and Deborah Nuzzi."

Page 44 of 107.

b.      "The board members, except for Rich Reyes, did not even understand what Bill Bodemer was saying because they were unaware that he was doing any type of investigation."  Page 45 of 107.

c.      "If Loan Nguyen had done her job and completed the simple task of setting up an account as the bookkeeper with Tom's Pizza, then this whole situation could have been avoided." Page 49 of 107.

d.      "The reason why Loan Nguyen had a vendetta against Thomas Nuzzi was due to the fact of her conversation with Richard Reyes, School Board President."  Page 53 of 107.

e.      "Once again this would be cleared up if the school board would have produced the closed session tapes of this meeting." Page 84 of 107.

f.      "Peter Dubravec was well aware of the conflict between Deborah Nuzzi and Jim DeZwaan...[sic citing various items of "proof"]" Page 92 of 107.

g.      "Jim DeZwaan had been told by the Bourbonnais Elementary School Board that he could retire or he would be non-renewed....Jim DeZwaan was not a well-respected educator in the area.  Bourbonnais elementary School District employees rejoiced when he left.  Jim DeZwaan was involved with Rotary because they paid for many of his international trips.  Jim DeZwaan had little to no meaningful relationships in the community.  The administrators in Bourbonnais rejoiced when he left..." Page 92 of 107.

h.      "Letter about psychological interview that doesn't make sense."  Page 93 of 107.

i.      "Of course Deborah Nuzzi wouldn't have cell phone records with her at a deposition. She didn't say she didn't have records to document DeZwaan's call, simply that she didn't have them there."  Page 93 of 107.

j.      "Reyes did not do an effective job of communication...Reyes stated in his deposition..." Page 104 of 107.

k.      "[sic Discussion of alleged incident where Bill Bodemer touched Tom at a basketball game, including speculation, hearsay and non-foundational references]...Bodemer had to show me that he is in control of me physically and he can do anything he wants." Page 107 of 107.

36.     Defendants are not simply requesting that the specific cited passages be stricken.  Each

passage is embedded within text that, taken as a whole, must be ruled inadmissible in total.

The cited sections are simply offered as demonstrative evidence for the court to rule the

entire affidavit inadmissible.  It is impossible to strike the quoted sections and give meaning

to the affidavit as a whole, since the offending passages are typically embedded within a

greater text that is also improper.

37.     Defendants are also requesting sanctions under Rule 11 and Rule 56(g), including the

possibility, set forth in the rule, that the attorney be held in contempt for allowing them to

be filed in their present form.  There can be only two explanations for an attorney allowing

such affidavits to be filed: either he did not read them, or he read them and made a reasoned

judgment that the objectionable material was appropriate.  In either case, sanctions are

appropriate under both Rule 11 and Rule 56(g). These documents are not "affidavits" as

required by Rule 56(e); their non-compliance is obvious on their face, and their filing should

not have been approved by an attorney.

WHEREFORE, Defendants respectfully move this Honorable Court to enter one, more, or

all of the following forms of relief:

1.      Rule that the Thomas Nuzzi and Deborah Nuzzi Affidavits are inadmissible;

2.      Strike both affidavits;

3.      Order Plaintiffs to submit new affidavits that comply with the rules, and extend the time for

Defendants to respond commensurate with the time granted for extension, and to award

substantial attorneys' fees to Defendants to be reflected in an appropriate fee petition for their

work in identifying the defects;

4.      Sanctions against the Plaintiffs, their Counsel, or both, under Rule 11 and Rule 56(g).

5.      Such other relief as this Court deems just and proper.

Respectfully submitted,

**MYERS & MILLER LLC**


By:____/s/Stephen R.  Miller_____
        Stephen R. Miller


Stephen R. Miller  (6182908)
Nikoleta Lamprinakos (6274018)
Johanna L. Tracy (6278612)
**MYERS & MILLER LLC**
Thirty North LaSalle Street
Suite 2200
Chicago, Illinois 60602
Ph:     312/345-7250
Fx:     312/345-7251